**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------x

Roy Den Hollander,                                        Docket No.

                              Plaintiff,

                                            **COMPLAINT**

     -against-

Katherine M. Bolger,                                      **Jury Trial Requested**
Matthew L. Schafer,
Jane Doe(s),

                              Defendants.
-------------------------------------------------------------------------x

1. This action alleges that the above named defendants ("Defendants") violated the following laws and rules of conduct:

    a. The Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030(a)(2)(C), which proscribes intentional unauthorized access to a computer and obtaining information from a protected computer where the conduct involves interstate or foreign commerce.

    b. The civil Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et al.*, ("RICO") by engaging in wire fraud, 18 U.S.C. 1343, and robbery—theft of computer related material that violated N.Y. Penal Code § 156.30, which is a Class E felony.

    c. Trespass to chattel under New York State law where the personal property with which Defendants interfered was electronically stored information.

    d. Injurious falsehood by making available to the public a knowingly false representation about Plaintiff's business product.

**Facts**

2. From 2014 to 2016, Plaintiff, an attorney and business consultant residing in Manhattan (Ex. A, Plaintiff's Business Certificate), was suing on his own behalf the Rupert Murdoch newspaper company Advertiser Newspapers Pty. Ltd., which does business as The Advertiser-Messenger Sunday Mail newspaper in Australia.[1] The Rupert Murdoch company was accused of injurious falsehood and interference with a prospective economic advantage of Plaintiff and was one of four defendants in *Hollander v. Shepherd, et al.* 152656/2014 (N.Y. Sup. Ct. 2014).

3. The two attorneys for Murdoch's company are Defendants Katherine M. Bolger ("Bolger") and Matthew L. Schafer ("Schafer") who practice law in Manhattan for the firm of Levine Sullivan Koch & Schulz, LLP.

4. On or after December 30, 2014, Bolger and Schafer stole an attorney work product document from Plaintiff's personal computer, which is connected to the Internet. Or they hacked into Plaintiff's remote computer-server on the Internet, which also contained the document and required authorization codes for access, and stole the attorney work product document. Plaintiff uses the computer remote-server as an "iCloud" for business and personal purposes.

5. Bolger admitted "accessing" Plaintiff's iCloud on December 30, 2014, and on at least two other times until January 13, 2015. (Ex. B, Bolger Aff. at ¶¶ 2-4, Feb. 3, 2015).

6. Schafer admitted "accessing" the iCloud on December 30, 2014, and January 7, 2015. (Ex. C Schafer, Aff. at ¶¶ 2-4, Feb. 3, 2015).

7. Since both admitted accessing the iCloud on a number of occasions, they most likely stole

---

[1] Plaintiff is currently a semi-retired attorney and business consultant.

the attorney work product document from the iCloud, but that does not rule out that they stole it from Plaintiff's personal computer without authorization.

8. Once Bolger and Schafer hacked into the iCloud, on information and belief, they stripped the access codes thereby making it viewable to them and the public at any time. This enabled them to scour the site at their convenience for Plaintiff's privileged statements, memoranda, correspondence, drafts, mental impressions and personal views concerning the litigation in the N.Y. Supreme Court case against their clients.

9. Bolger and Schafer either engaged in the hacking and theft on their own or had assistance from an unknown person or persons connected with them and the Murdoch organization ("Jane Doe(s)").

10. When Bolger, Schafer or Jane Doe(s) broke into the iCloud or plaintiff's personal computer without authorization they copied or downloaded the attorney work product that Bolger submitted by wire to the electronic filing system of the N. Y. Supreme Court ("NYSCEF") as Exhibit 1 in her sworn affirmation of January 12, 2015. [2] (Ex. D, Bolger affirmation in opposition to Plaintiff's motion for trial on personal jurisdiction at ¶ 2, Jan. 12, 2015).

11. By submitting the attorney work product document to the N.Y. Supreme Court, which Bolger and Schafer did three times over January 12 and February 3, 2015, they intentionally made the document public.

12. In her January 12, 2015, affirmation, Bolger admitted taking the document from Plaintiff's iCloud but intentionally lied that it was a "Media Release." (Ex. D at ¶ 2). In her memorandum of law, she referred to the document as a Media Release eight (8) times. (Ex. E at pp. 9, 17, 18 (five times), 19, Jan. 12, 2015).

---

[2] Plaintiff discovered the invasion of his iCloud or his personal computer when he saw the privileged attorney work product on January 12, 2015, included in the Bolger Affirmation exhibits.

3

13. By doing so, she intentionally made it appear to anyone viewing the court's public filings that Plaintiff's business and the criteria for its products and services do not consider that such private and privileged information should be protected, but rather, inconsistent with industry standards, be turned into a press release for dissemination to the public.

14. By defrauding the public into believing that Plaintiff's business volitionally made public to the media such a detailed document during litigation that comprised an attorney's mental impressions, views and contingency tactics; Bolger disparaged the ability of Plaintiff's business to keep privileged information private and protect confidences while creating the false impression that Plaintiff's business services are inept and downright harmful to clients.

15. So how did Bolger, Schafer or Jane Doe(s) find Plaintiff's iCloud on the Internet?

16. Bolger and Schafer admit finding a reference to the URL (Internet address) for Plaintiff's iCloud on the Columbia Business School Alumni Club website.  (Ex. F, Bolger memorandum of law in opposition to Plaintiff's motion to withdraw the document, at 5, Feb. 3, 2015).  Plaintiff is a graduate of Columbia's Business School, which is publicly available information.

17. The Columbia Business School Alumni Club of New York website listed Plaintiff's connection with the iCloud's URL that stored the attorney work product.  But that connection did not make Plaintiff's iCloud public because when the link was clicked, a notice came up: "page not found."

18. What it did, however, was tell Bolger, Schafer or Jane Doe(s) that there was a URL, which they most assuredly Googled but found that the iCloud was code protected.  They then knew of an iCloud that Plaintiff intentionally kept private; therefore, it must contain confidential and privileged information.

19. On information and belief, Defendants targeted this URL and broke into the iCloud by using "brute force cracking" [3]. Once inside, they most likely stripped the site of its access codes and eventually downloaded everything from the iCloud such as attorney work product documents, attorney client privileged information, financial information, security codes, writings, ideas, contacts, photos, music, videos, emails—all the business and personal information that Plaintiff kept protected in his iCloud.

20. Defendants may have also illegally accessed Plaintiff's personal computer that is connected to the Internet and also contained the attorney work product document along with business and personal information.

21. Bolger and Schafer refused to say what exactly they downloaded from Plaintiff's iCloud or his personal computer, other than the attorney work product document.

22. On information and belief, Defendants will eventually do a WikiLeaks type release of all the material they hacked so as to allow the Murdoch newspaper to spin the data into further harming Plaintiff's law and consulting business and disparaging its products and services.

23. Defendants hacking and theft violated the following criminal statutes in addition to the civil causes of action on which this case is based:

    a. Unauthorized use of a computer, N.Y. Penal Code § 156.05;

    b. Computer trespass, N.Y. Penal Code § 156.10;

    c. Unlawful duplication of computer related material, N.Y. Penal Code §§ 156.29, 156.30;

    d. Computer tampering, N.Y. Penal Code § 156.20;

---

[3] Brute force cracking is a trial and error method used by application programs to decode encrypted data such as passwords or Data Encryption Standard (DES) keys through an exhaustive effort (using brute force) rather than employing intellectual strategies that trick a person into revealing his access codes.

## Causes of Action

**I. The Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030(a)(2)(C)**

24. Bolger, Schafer and, on information and belief Jane Doe(s), violated 18 U.S.C. §1030(a)(2)(C) by intentionally accessing Plaintiff's protected iCloud or his personal computer without authorization and stealing the attorney work product from either of those protected computers, and, on information and belief, other data.

25. Both computers that were hacked were used in or affected interstate commerce.

26. Plaintiff used the iCloud and his personal computer for business as a lawyer and business consultant that crossed state lines.

**II. Civil RICO**

27. RICO "protects the public from those who would unlawfully use an enterprise (whether legitimate or illegitimate) as a vehicle through which 'unlawful . . . activity is committed.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164 (2001).

28. Civil RICO has a number of requirements that are listed below along with how they apply to this case against the Defendants.

The Enterprise

29. An Enterprise can be a legal entity, such as a corporation, or a group of persons who associate together for a common purpose of engaging in a course of conduct and as an ongoing organization with various associates functioning as a continuing unity that affect interstate or foreign commerce.

30. Bolger and Schafer work as attorneys for the law firm of Levine Sullivan Koch & Schulz, LLP, and, on information and belief, Jane Doe(s) are associated with the firm and the Murdoch organization.

31. Levine Sullivan Koch & Schulz, LLP is the medium through which the Defendants' RICO activities are conducted—it is the Enterprise.

32. The Enterprise affects interstate commerce because it is a national law firm with offices in New York City, Washington, D.C., Philadelphia, PA. and Denver, CO. that often handles cases with effects that cross state lines, or, as in the New York Supreme Court case, that crossed foreign boundaries.

33. Bolger, Schafer and, on information and belief, Jane Doe(s) carried out their racketeering activities as part of the Enterprise's function in representing its clients in the N.Y. Supreme Court case.

Pattern of Racketeering Activity and Predicate Acts

34. A Pattern of Racketeering Activity requires that a defendant commit two or more "predicate acts" (also called racketeering activities) that are related and connected in time.

35. Here the "predicate acts" by the Defendants are wire fraud and robbery.

*Wire fraud*

36. Wire fraud under 18 U.S.C. § 1343 requires

    a. a scheme or artifice to defraud by means of false pretenses, representations or promises (scheme includes half-truths, concealment of material facts, and deceit);

    b. causing such misrepresentations to be transmitted or making a communication in furtherance of the scheme by wire, radio or television communication in interstate or foreign commerce; and

    c. intentionally devising, participating in, or abetting such a scheme, which is inferred by a person's pattern of conduct and the nature of the scheme.

37. The purpose of the wire fraud statute is to protect businesses and property.

38. Plaintiff had a property interest in the attorney work product document, which was a product of his business as an attorney. He also had property and privacy interests in his iCloud and personal computer.

39. Bolger, aided and abetted by Schafer and, on information and belief, Jane Doe(s), falsely and intentionally depicted the attorney work product as a "Media Release," which inferred it had been submitted to news organizations, and, therefore, Plaintiff had volitionally made it a public document. (Ex. D, ¶ 2; Ex. E, at pp. 9, 17, 18, 19).

40. Bolger's falsehood amounted to perjury in her January 12, 2015, affirmation, Ex. D, ¶ 2.

41. Bolger's fraud or scheme, aided and abetted by Schafer and, on information and belief, Jane Doe(s), was to deceive viewers of the N.Y. Supreme Court case on the publicly available NYSCEF website into believing that Plaintiff's business and the services it provided, both legal and business, were inept because they not only made confidential and privilege information public but actually released such to the press.

42. As the lead attorney on the case, Bolger intentionally devised the scheme while Schafer and, on information and belief, Jane Doe(s) intentionally participated and abetted the scheme.

43. Bolger and Schafer communicated the fraud over the wire five times by transmitting Bolger's January 12, 2015, affirmation (Ex. D) and memorandum of law (Ex. E), and her February 3, 2015, affirmation (Ex. B), her memorandum of law (Ex. F) and Schafer's affidavit (Ex. C).

*Robbery*

44. On information and belief, Bolger, Schafer and Jane Doe(s) used the hacking technique referred to as "brute force" to gain access to Plaintiff's iCloud.

45. Robbery requires the use or threat of force, but in the modern electronic-world, guns and baseball bats are archaic when it comes to stealing valuable information through the Internet.

Today the surrogate for the old use of physical force is the hacking technique of using a computer to hit a protected website with an electronically rapid succession of different codes until the right one is found—"brute force cracking."

46. Bolger admits accessing Plaintiff's iCloud once on December 30, 2014, and on at least two occasions thereafter. (Ex. B at ¶¶ 2-4).

47. Schafer admits accessing Plaintiff's iCloud once on December 30, 2014, and again on January 7, 2015. (Ex. C at ¶¶ 2-4).

48. Bolger, Schafer and, on information and belief, Jane Doe(s) most likely forced their way into the iCloud at some point in time and left the front door open for future theft by stripping it of its access codes. Or they forced their way in each time they accessed the iCloud in order to steal private and confidential information.

*Two or more predicate acts of wire fraud and robbery*

49. The RICO pattern of racketeering activity requires the commission of at least two predicates.

50. As alleged above ¶, Bolger and Schafer committed five predicate acts of wire fraud.

51. As alleged above, Bolger, Schafer and, on information and belief, Jane Doe(s) have committed at least two predicate acts of robbery.

*Predicate acts are related and "open" in time.*

52. "Predicate acts" are considered related under RICO when they have the same purpose, participants, targets and method of commission.

53. The predicate acts of robbery had the purpose to obtain privileged and confidential information that could be used to disparage Plaintiff's business, its products and services.

54. The predicate acts of wire fraud had the same purpose that by falsely depicting the attorney work product as a public press release, such would disparage Plaintiff's business and the

9

products and services it provides. The participants are the same—Defendants; the target is the same—Plaintiff. Further, Bolger, Schafer and, on information and belief, Jane Doe(s) used the same method of hacking and theft in aiding and abetting Bolger's scheme.

55. The predicate acts by Defendants are of an "open" nature.

56. It became evident from Bolger's first motion to dismiss the N.Y. Supreme Court case on August 29, 2014, that her team was trolling the Internet for information on Plaintiff's business.

57. On information and belief, Bolger's team continues trolling the Internet for information on Plaintiff's business and continues to try to hack into Plaintiff's iCloud or personal computer to obtain any new information stored there, so as to further harm Plaintiff's business and its services and products.

58. As a result, the iCloud and personal computer security have been increased through costly measures.

The Prohibited RICO 18 U.S.C. § 1962(c) Activity

59. 18 U.S.C. § 1962(c) declares and identifies the conduct under RICO that is illegal in which Bolger, Schafer and, on information and belief, Jane Doe(s) have been and are engaging:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

60. To violate RICO, the Defendants are required to play some part in conducting, participating or directing the affairs of the Enterprise in which they function.

61. The function of the Enterprise (Levine Sullivan Koch & Schulz, LLP) is to engage in litigation in state and federal courts on behalf of its clients.

62. Bolger is a partner in the Enterprise who makes litigation decisions in the cases on which she is working and directs associates, paralegals and others employed or retained by the Enterprise to carry out the affairs of the Enterprise.

63. Schafer is an associate of the Enterprise who contributes to litigation decisions and carries out the directives of Bolger. Schafer also directs other associates, paralegals and others employed or retained by the Enterprise to carry out the affairs of the Enterprise.

64. On information and belief, Jane Doe(s) are retained by the Enterprise or provided by the Murdoch organization to contribute to the means for carrying out litigation decisions and to participate in effecting those decisions whether on cases in general or just the N.Y. Supreme Court case.

65. Bolger, Schafer and, on information and belief, Jane Doe(s) take part in the conduct of the Enterprise by knowingly implementing decisions as well as making them.

66. Bolger, Schafer and, on information and belief, Jane Doe(s) used their positions of authority and influence in the Enterprise to steal the attorney work product from Plaintiff's iCloud or his personal computer.

67. Bolger and Schafer used their positions of authority and influence in the Enterprise to carry out Bolger's fraudulent scheme by falsely depicting the privileged attorney work product as a press release—a public document.

68. Bolger and Schafer used their positions of authority and influence in the Enterprise to transmit the document to the court's website where it would be viewed by the public-at-large; thereby, harming Plaintiff's business by falsely depicting his business as incompetent, its services as inept and its products deficient.

69. The Defendants were motivated to maintain their income and positions in or with the Enterprise.

### III. Trespass to chattel under New York State law

70. Bolger, Schafer and, on information and belief, Jane Doe(s) interfered with the exclusive right of possession of the attorney work product of Plaintiff's business by, on information and belief, copying it from Plaintiff's iCloud.

71. Bolger, Schafer and, on information and belief, Jane Doe(s) did so intentionally and without Plaintiff's consent.

72. Bolger, Schafer and, on information and belief, Jane Doe(s) knew about the iCloud and that it was protected by security codes; therefore, on information and belief, they concluded that it contained privileged and confidential digital information which could be used to injure Plaintiff's business and disparage the services and products it offers.

73. The digital information on the iCloud was chattel owned by Plaintiff's business.

74. Without Plaintiff's authorization, Defendants electronically bulldozed through the borders of Plaintiff's iCloud for the purpose of accessing its stored information.

75. The method of breaching the security codes was propelled by Bolger, Schafer and, on information and belief, Jane Doe(s) in order to make electronic contact with the digital information of Plaintiff's business by viewing it, copying it and/or downloading it.

76. On information and belief, Defendants knew that such interference was substantially certain to result when they illegally accessed Plaintiff's iCloud.

77. Bolger and Schafer decided to use the digital information obtained to not only harm Plaintiff's business and disparage its services and products but also to intimidate Plaintiff into relinquishing his role as a men's rights advocate.

78. Bolger and Schafer sent Plaintiff the message that if he persisted in fighting for the rights of men in the courts, they would destroy his business. They would publish out of context and falsely depict more of the stolen information and engage in more hacking of his iCloud. In effect, they were telling him—"resistance is futile, you will be assimilated" to our misandry beliefs or your business will be beheaded.

79. Such is Coercion in the second degree under N.Y. Penal Law § 135.60(5), since their possession of much, if not all, of Plaintiff's personal and business data on the iCloud amounts to a continuing threat to expose secrets or publicize asserted facts, whether true or false, tending to subject Plaintiff and his business to hatred, contempt or ridicule.

**IV. Injurious Falsehood**

80. Injurious falsehood requires (1) intentional publication, (2) of false information about a person's property, (3) done maliciously (common-law malice) or in reckless disregard for the truth or falsity, (4) a reasonably prudent person would or should anticipate that damage to another will naturally flow there from, and (5) results in loss measured by special damages.

81. Bolger and Schafer intentionally published Plaintiff's attorney work product by placing it on the NYSCEF website, which is available to the public.

82. Bolger, aided and abetted by Schafer, falsely depicted the attorney work product, which was the property and product of Plaintiff's business, as a "Media Release" that had been submitted to news organizations.

83. Bolger, aided and abetted by Schafer, made a fraudulent, malicious and known to be false statement with the intention of impairing Plaintiff's business product.

84. Bolger and Schafer as lawyers experienced in representing media news organizations had to know that the document was not a press release but an attorney work product given its

length, contingent questions and possible answers to news media inquiries during litigation of the N.Y. Supreme Court case.

85. Malice or at the very least reckless disregard is evinced by Bolger, aided and abetted by Schafer, changing the title of the attorney work product from "Responses to Media" to "Media Release."  (Ex D, Bolger affirmation at ¶ 2, Jan. 12, 2015).

86. It is enough for the injurious falsehood cause of action if the falsehood charged was intentionally uttered and did in fact cause the plaintiff to suffer actual damage in his economic or legal relationships.

87. As a result of Bolger, aided and abetted by Schafer, falsely depicting the attorney work product as a media release and publishing it as such, Plaintiff's legal and business clients have dried up.

88. It is up to the triers of the facts to determine whether the loss is to be attributed to the false attribution by Bolger, aided and abetted by Schafer.

89. One long term client who paid an annual retainer of $1,000 a year has canceled his legal and business relationship with Plaintiff as a result of Bolger and Schafer's actions.

90. Plaintiff has incurred expenses in bringing this action, beginning with the $400 filing fee, in order to counteract Bolger and Schafer's publication and as a reasonable effort to minimize damages by showing that Bolger and Schafer falsely depicted the attorney work product as a publicly available press release so as to disparage Plaintiff's business product.

## V. Violation of Attorney Work Product Privilege

91. The U.S. Supreme Court has held that the phrase "work product" embraces such items as "interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" conducted, prepared or held by

an attorney. *Hickman v. Taylor*, 329 U.S. 495, 511 (1947).

92. New York has accepted the definition of work product set forth in *Hickman* in determining the scope of subsection CPLR 3101(c) (see, e.g., 3A Weinstein-Korn-Miller, *N.Y. Civil Prac.* at ¶¶ 3101.44, .47; *Warren v. New York City Trans. Auth.*, 34 A.D.2d 749 (1st Dept. 1970); *Babcock v. Jackson*, 40 Misc.2d 757 (N.Y. Sup. 1963).

93. Documents within CPLR 3101(c) include mental impressions and personal beliefs held by an attorney relating to litigation. *Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.*, 191 Misc. 2d 154, 159 (N.Y. Sup. 2002).

94. CPLR 3101(c) recognizes the sanctity of the lawyer's mental impressions and strategic analyses. 3A Weinstein, *N.Y. Civil Prac.* ¶ 3101.42.

95. Bolger and Schafer, however, do not. It's winning by any means for them.

96. The attorney work product document was drafted during litigation in the N.Y. Supreme Court case and includes mental impressions of the Plaintiff attorney.

97. The attorney work product document lists possible answers to possible questions asked by the news media concerning the litigation.

98. An attorney's answers to possible questions from the news media are very much a part of an attorney's litigation strategy.

99. Just because the words in the hacked document were memorialized in a draft instead of memorized, does not mean they were or would have been communicated to the press or that the work product privilege was waived. In fact, the document was not presented to the press and not presented to anyone other than Plaintiff until Bolger, Schafer and, on information and belief, Jane Doe(s) stole it.

100. "Here [was] simply an attempt, without purported necessity or justification, to [exploit] written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. . . . Not even the most liberal of . . . theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510.

## Injury and Damages

101. Plaintiff's business is that of providing legal and business consulting products and services.

102. Bolger, Schafer and, on information and belief, Jane Doe(s)' hacking of Plaintiff's iCloud or his personal computer has required Plaintiff to institute costly additional security measures to protect against these Russian-like criminals of the Internet.

103. Bolger and Schafer making available to the public Plaintiff's attorney work product has, as Bolger and Schafer intended, nearly destroyed Plaintiff's business because whenever a client hires him for litigation services the opposing counsel will enlist the work product stolen by Bolger, Schafer or, on information and belief, Jane Doe(s) to use *ad hominem* attacks against Plaintiff, his business and its products and services. No client will pay for an attorney to defend himself rather than his client before a court.

104. Further, Bolger and Schafer are now sitting on a mass of private and confidential personal and business information that they can use at will to engage in *ad hominem* attacks against Plaintiff and his business in other cases in which they are involved, or provide the data to attorneys in cases they are not involved with, or provide the data to the many news media clients that they represent, especially Murdoch newspapers. Such amounts to a clear

intimidation that Plaintiff dare not exercise his First Amendment rights under the U.S. Constitution unless it conforms to their misandry beliefs.

105.   Plaintiff, therefore, seeks economic damages for the near complete destruction of his business in the amount of $500,000.

106.   Under civil RICO, Plaintiff requests a trebling of those damages to $1.5 million.

107.   Plaintiff also seeks punitive damages under the trespass to chattel and injurious falsehood actions in the amount of $2 million.

## Relief Sought

108.   In addition to the above cited damages, Plaintiff requests that this Court order (1) Bolger, Schafer and, on information and belief, Jane Doe(s) to turn over to Plaintiff all paper and digital copies of the attorney work product and any other material obtained from the Plaintiff's iCloud or personal computer that they are in possession or control of; (2) Bolger, Schafer and, on information and belief, Jane Doe(s) to identify all the persons, including legal entities, involved in obtaining the attorney work product; (3) Bolger, Schafer and, on information and belief, Jane Doe(s) be prohibited from publicizing the attorney work product and any other materials they obtained from the Plaintiff's iCloud or personal computer; (4) Bolger, Schafer and, on information and belief, Jane Doe(s) inform the Court of any other person that to their knowledge has copies of any data obtained from Plaintiff's iCloud or personal computer; and such other and further relief as may to this Court seem just and proper.

## Subject Matter Jurisdiction

109.   This Court has subject matter jurisdiction because this action rests on federal questions under the Computer Fraud and Abuse Act of 1986, 18 U.S.C. § 1030 *et al*. and the civil

enforcement provisions of the Racketeer Influenced and Corrupt Organizations Act 18 U.S.C. §§1961-68.

110. This Court has subject matter jurisdiction over the New York State actions for trespass to chattel and injurious falsehoods under its pendent jurisdiction.

**Personal Jurisdiction**

111. This Court has personal jurisdiction over each defendant under Fed. R. Civ. P. 4(k)(1)(A) because each defendant is subject to personal jurisdiction in the New York State courts and has minimum contacts with the State; or under Fed. R. Civ. P. 4(k)(2), because each defendant has minimum contacts with the United States; or under 18 U.S.C. § 1965(b) or (d) of the RICO statute.

**Venue**

112. Venue is proper in this Court under 18 U.S.C. 1965(a) for each defendant because each defendant resides, is found, has an agent, or transacts affairs in this district.

113. In the alternative, venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims against each defendant occurred and are occurring in this forum.

114. In the alternative, venue is proper in this Court under 18 U.S.C. 1965(b) in order to serve the ends of justice because at least one of the defendants satisfies at least one of the above venue requirements.

Dated: December 20, 2016  
　　　　New York, N.Y.

Respectfully,  
s/ Roy Den Hollander  
Roy Den Hollander, Esq.  
Plaintiff and Attorney  
545 East 14th Street, 10D  
New York, N.Y. 10009  
(917) 687-0652  
rdenhollander97@gsb.columbia.edu